UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Case No.1:07-CR-340 (EGS) |
| | : | |
| | : | |
| | : | |
| v. | : | Sentencing: May 6, 2008 |
| | : | |
| RAYMOND JACKSON, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION WITH REGARD TO**
**18 U.S.C. § 3553(a) SENTENCING FACTORS and**
**MEMORANDUM IN AID OF SENTENCING**

The defendant, Raymond Jackson, through undersigned counsel, respectfully submits to the Court his position regarding the sentencing factors espoused in 18 U.S.C. § 3553(a). The Supreme Court's decision in *United States v. Booker,* 125 S. Ct. 738 (2005) and its progeny require district courts to consider all the factors contained in § 3553(a) when calculating a criminal defendant's ultimate sentence. This motion presents Mr. Jackson's position with regard to those factors contained in § 3553(a). In short, in light of Mr. Jackson's lack of criminal history, his long history of work, his family involvement, his plea of guilt, his remorse, his cooperation with the government and the fact that he is now a convicted felon, we respectfully request the Court to sentence him to the lowest sentence sufficient to meet the goals of § 3553(a), a sentence we respectfully submit, does not require a sentence of incarceration. *See United States v. Ferguson,* 456 F.3rd 660, 665 (6th Cir. 2006).

## INTRODUCTION

Ray Jackson stands before the Court for sentencing, having entered a plea of guilty to a one count Information charging theft or embezzlement in connection with health care, in violation of 18 US Code Section 669. He brings with him an immeasurable amount of regret, remorse, sorrow, humiliation and despair for his conduct in this case. To those who know Mr. Jackson, it is inconceivable that he would stand accused of crimes of this nature. Indeed, when the Court considers his upbringing, impressive background and actions in this case, it is quite clear that Mr. Jackson is far from the typical criminal defendant.

We respectfully submit that Mr. Jackson's conduct in this case is inconsistent and inapposite to the type of person that he truly is. Nevertheless, Mr. Jackson's actions in this case were wrong and unjustifiable. In pleading guilty, Mr. Jackson has taken full responsibility for his actions and offers his sincere apology to the Court, his family, friends, and the community.

## PERSONAL BACKGROUND OF MR. JACKSON

### I.    MR. JACKSON'S UPBRINGING

Ray Jackson was born on September 1, 1958 in Maryland. He was one of five children born to William and Mary Jackson. While the family was poor financially, (his dad was a landscaper and his mom a bank teller) they were rich emotionally. The family was emotionally close –knit and participated in family activities, always having dinner together to discuss the events of the day.

Mr. Jackson's parents encouraged him to do well in school and be respectful of others. His parents provided him with a stable home, proper guidance, direction and core values.

Mr. Jackson's family was shocked to learn that he had been arrested in this case. This matter has had a particularly devastating effect on those closest to him.

## II.     MR. JACKSON'S EDUCATIONAL BACKGROUND AND WORK HISTORY

Mr. Jackson graduated from Lackey High School in Indian Head Maryland in June, 1976. He then attended Morgan State University and finally the University of Maryland School of Pharmacy in Baltimore, where he earned a bachelor of science degree in pharmacy.

After graduating college and receiving his pharmacist license Mr. Jackson began work and, until he was placed on leave after being charged in this case, worked steadily, holding positions of trust at NIH, FCI Terminal Island, FCI Cumberland and at the US Public Health Service, before joining St. Elizabeths as a senior pharmacist, then chief pharmacist.

Mr. Jackson's work record, until his involvement in the instant case, has been exemplary; and he has been described as an outstanding employee.


## III.     THE OFFENSE CONDUCT

The offense conduct is presented in the presentence report[1]. And while we do not simply wish to repeat the information already provided to the Court, we do wish to elaborate on Mr. Jackson's role. As the Court is aware, from the presentence report, Mr. Jackson has two children, both in college. Mrs. Jackson also has had numerous family responsibilities requiring her time as well as financial assistance, causing money to always be a subject of concern in the family.

While Ray Jackson has been a good student and excellent employee, it has always been his wife who wore the pants in the family. Mrs. Jackson, who this counsel has met on numerous occasions, is the more strong willed of the two. She is outgoing, demanding, decisive and hard working. Although generous to a fault, Mrs. Jackson was the one who devised the scheme to steal medications and then sell them through a company she and her husband started. She began

---

[1] As the Court can see from the attached letter to the probation officer, there are no unresolved material facts or sentencing factors in the presentence report. While the final report has not yet been disclosed, we believe the corrections we requested will be made in the final version of the report.

stealing from Kaiser Permanente and convinced Ray to start taking medications from St. Elizabeths. (In fact, she took half again as much as Ray took from his place of employment.)

We believe it also important to note Ray Jackson's mental state while and after this crime was being committed. Ray Jackson has long suffered from alcoholism and depression. He had begun to have serious remorse attacks for his actions long before Ms. Jackson was arrested. In fact, long after her arrest no one knew of Ray's involvement at St. Elizabeths. The government first learned of Ray Jackson's crime when Mr. Jackson instructed below signed counsel to reveal his crime to authorities. On Mr. Jackson's command counsel called Mr. Zeno, the Assistant United States Attorney now prosecuting the case, and alerted him to the crime.

We also believe it important to note that after self reporting his crime, Mr. Jackson attempted to cooperate with the government, not in an effort to obtain a departure (USSG 5K1.1) motion for himself, but, selflessly, to help his wife in her sentencing. He debriefed and even attempted to assist the government in apprehending the owner of the pharmacy where almost all the medications were sold.

As the court is aware, the consequences of this offense have had, and will continue to have, broad sweeping effects on his life, on his ability to earn a living, and on many future activities which are hampered by a felony conviction.

**ARGUMENT**

In determining Mr. Jackson's sentence, this court is directed to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence imposed to (1) "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (2) "afford adequate deterrence to

4

criminal conduct" and (3) "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(a)(2)(C).  In support of his argument with regard to the relevant considerations, Mr. Kasprik offers the following:

**I      NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The pre-sentence report prepared by Senior Probation Officer Kathie J. McGill describes the criminal activity of Mr. Jackson.  What Mr. Jackson did was really quite simple.  He acted on his wife's desire to have a better life and began to steal medicines from his employer.

There is, obviously, a much longer version of this story.  The longer version relates to Mr. Jackson's desires to satisfy his wife.  The longer version incorporates his alcoholism, depression and memory of how poor he was as a child, wanting to give his children a better life. While none of these factors excuse his conduct, we submit that they are important when considering the appropriate sentence to impose. Clearly Mr. Jackson wants to please others. Even after self reporting his crime, he choose to cooperate to help his wife at her sentencing, not his own. He used the last monies they had, $85,000.00, to pay at his wife's sentencing, not his own. As is noted in the presentence report, Ray Jackson is still committed to the marriage, but fearful his wife is not, as he fears she will no longer want a man who cannot, in large part due to a loss of professional license and encumbered by a felony conviction, support her in the manner she wishes.

In considering the "nature and circumstances of the offense" under Section 3553(a)(1), we urge the court to recognize the offense for what it truly was.  It was wrong.  It was illegal. But, it was the result of a man suffering from two serious diseases, not thinking clearly and being led by a stronger force in his life.

## II.    HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Jackson is 49 years of age.  As noted earlier, after graduating college, he has worked almost every day of his life.

Ray Jackson served his country honorably for 4 years in the Air National Guard Reserves at Andrews Air Force Base.

Ray Jackson has not only been a good son to his elderly parents, but a good friend to those around him, a good father to his two children and a good husband to a controlling wife. (This memorandum is not meant as a 'throw the wife under the bus' defense. But Ms. Jackson was the controlling force in the family. For example, Mr. Jackson has not completed the financial information requested by the probation office, not because he won't but because he can't. Ms. Jackson, now incarcerated, has access to all financial documents—not Mr. Jackson.)

As the Court can see from the numerous letters of support, attached as Exhibit two, Mr. Jackson is loved and admired by relatives, friends and co-workers.

Even given the nature and circumstances of this offense, viewed in the extremely ugly picture painted, Mr. Jackson's family still stand beside him.  All those who know him, regardless of how upset they may be with him by the actions which bring him before the court, they still stand beside him.

There is no question that Mr. Jackson's conduct in this case was wrong, but it was not the conduct of a man with an evil heart or a person who believed that he was above the law.  Aside from his conduct with his wife in taking medicines from his place of employment, Mr. Jackson has been a law abiding citizen who has been devastated by these charges.

**III**    **THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE**

Again, we submit that Mr. Jackson's long history of employment, service to country, devotion to family, lack of criminal history, along with the fact that he not only admitted his guilt but self reported his crime and attempted to cooperate with the government knowing he would receive no credit for the cooperation, and will suffer the consequences of being a convicted felon, are all sufficient punishment to reflect the seriousness of his involvement in this offense and to promote respect for the law. We respectfully submit that a period of incarceration is not necessary to satisfy any of the objectives of § 3553.

**IV**    **THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT**

We submit the same factors listed above to promote respect for the law and to provide just punishment also afford adequate deterrence to criminal conduct. Clearly Mr. Jackson has been deterred. The shame and humiliation he feels, even if there were no other consequences, would serve to deter him. A felony conviction, the civil liberties one loses after a felony conviction and overall public humiliation are enough, given the facts of this case, to deter criminal conduct by others. Given the unique circumstances of this case, we respectfully submit that, while prosecution and punishment are necessary and important, incarceration is not needed to ensure that others do not fall victim to the series of events that pushed Mr. Jackson to commit this crime.

**V.**    **THE NEED TO PROTECT THE PUBLIC FROM FURTHER CRIMES BY MR. JACKSON**

There can be no real dispute that there is no need for a period of incarceration in this case to protect the public from future crimes by Mr. Jackson. Mr. Jackson's arrest and his

involvement in the criminal justice system, along with the conviction and attendant consequences, is more than sufficient to ensure that he will never again make a bad decision with respect to any illegal conduct. This has been a hard learned lesson for Mr. Jackson. The public needs no protection from him. Since his arrest, he has cooperated with the government in every aspect and been truthful with government agents and the Probation Office.

## VI. THE NEED TO PROVIDE RESTITUTION

Even though Mr. Jackson has already made restitution in the amount of $85,000, there is still a large amount of restitution for which he is responsible, albeit mainly restitution for medicines stolen by his wife from Kaiser. For that restitution to be paid, Mr. Jackson needs to obtain employment and made steady payments towards the outstanding balance. Once he has been sentenced his goal will be to obtain employment and make restitution as soon as he possibly can.

## CONCLUSION

The advisory sentencing guideline range in this case, based on the criminal history I, with an offense level of 17, provides a guideline range of from 24 to 30 months. Obviously, the Court, by recent Supreme Court decisions, is required to consult the guidelines. As we indicated earlier, there is a statutory command to impose a sentence "sufficient but not greater than necessary" to achieve the specified purposes of punishment. This principle, has been a central theme in American criminology since the framing of the Constitution.

Considering all the factors of 18 U.S.C. § 3553(a), as outlined herein, along with the regret, remorse, sorrow, humiliation and despair that Mr. Jackson feels for his conduct in this

case, we respectfully pray that the Court sentence Mr. Jackson to a term of probation and order as a condition of probation that he perform community service and make full restitution.

We note that Ray Jackson's wife received a 6 month sentence after her plea of guilty in Prince George's County and will be released later this month, after serving far less than 4 months incarceration. There are several reasons that Mr. Jackson's sentence should be less than his wife's sentence. First, she did not stop her criminal conduct until her arrest. Mr. Jackson self reported his crime and directed counsel to assist in working out a plea of guilty. Second, Ms. Jackson was the one who devised the idea of the crime. Third she stole over $140,000, while Ray stole $95,000. Fourth, Ray cooperated with the government to help his wife obtain a lighter sentence. And finally, while Ms. Jackson's strong will and survival instincts are admirable, it is Mr. Jackson who, because of his weaknesses has suffered the most. He has lost 20 pounds from anxiety and not eating. He has been so depressed that he can't even make it up the stairs to his bed, often just sleeping under a pile of clothes on his sofa. He is truly a broken man.

We submit that a sentence which does not require incarceration is, given all the circumstance of this case, given this crime and this offender, not only fair and just, but also reasonable.

Respectfully submitted,

_____/s/_____
G. ALLEN DALE  954537
601 Pennsylvania Avenue, N.W.
Suite 900 - North Building
Washington, D.C.  20004
Telephone:  (202) 638-2900
Facsimile:  (202) 783-1654
gallendale@aol.com

9

EXHIBIT ONE

LAW OFFICES OF

# G. Allen Dale

A PROFESSIONAL CORPORATION

G. Allen Dale
Direct Dial Number
(202) 783-1629

601 Pennsylvania Avenue, NW
Suite 900, North Building
Washington, D.C. 20004

April 8, 2008

Kathie J. McGill
Senior United States Probation Officer
333 Constitution Avenue, NW
Washington, DC 20001

      Re: United States v. Raymond Jackson, 1:07cr340-01

Dear Ms. McGill:

      Mr. Jackson and I have reviewed the presentence report you prepared for the Honorable Emmet G. Sullivan in the above referenced case. On the whole we found your report to be not only accurate but fair. We do note the following, nonmaterial objections.

      First, we agree with the items addressed by AUSA Tom Zeno in his April 7, 2006 submission to you.

      Aside from Mr. Zeno's corrections we also note that in paragraph 52, you indicate that considering the restitution obligation in the case, his wife's custody status, and the defendant's unemployment, he does have the ability to pay a fine. I presume you meant to say that he **does not** have the ability to pay a fine.

      Paragraphs 5 and 71 speak to restitution. Through what I am sure is only an oversight you have not mentioned that Mr. Jackson has already paid $85,000.00 towards restitution. This was paid, technically, by Ms. Jackson, who was required to come to her sentencing with this amount. Since Mr. Jackson has accepted responsibility for all restitution he should be credited with the $85,000 previously paid and the total amount should be reduced accordingly.

      You mention, at paragraphs 49 and 51 you emphasize that Mr. Jackson has not returned the financial documents requested by you. Please note that, as he told you in my presence and, according to him, on other occasions, his wife controlled all aspects of the family finances, she is incarcerated and is uncooperative at present. He has no ability to provide what you request. This, combined with his acute state of depression (as you do

touch on briefly in your report) makes it impossible for him to comply with your requests.

Aside from the matters mentioned herein, we do find your report accurate and we thank you for the time you have devoted to it.

Sincerely,

G. Allen Dale

GAD/sl

Enclosure

Cc: Tom Zeno

**KAISER PERMANENTE** ®

Mid-Atlantic Permanente Medical Group, P.C.

Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.

April 7, 2008

Mark E. Schamel
Attorney at Law
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC 20004-2601

RE:  Brenda L. Jackson

Dear Mr. Schamel,

Reference is made to your March 25, 2008 request for assistance.

Attached are copies of two (2) Cashier's checks dated January 04, 2008, in the amount of $36,000.00 and January 07, 2008, in the amount of $45,000.00, and one (1) Harbor Bank of Maryland check from Lewyn Scott Garrett dated January 04, 2008, in the amount of $4000.00.   The attached checks were made payable to and deposited by Kaiser Permanente on behalf of Brenda L. Jackson as payment for court ordered restitution in the amount of $85,000.00.

I hope this information is helpful and if I can be of further service please do not hesitate to contact me at telephone number 301-816-6849 or at my office address, 2101 E. Jefferson St, 2 West, Rockville, MD  20852.

Sincerely,

Dale E. Bird
Senior Investigator
National Special Investigations Unit
National Compliance, Ethics & Integrity Office

**Bank of America** ⋙

Cashier's Check

No. 2943304

Notice to Purchaser: In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Date: **JANUARY 04, 2008**

30-1/1140
NTX

Banking Center    **UPPER MARLBORO**

5012324  00008   002943304

**LEWYN S GARRETT**
Remitter (Purchased By)

$ **\*\*36000.00\*\***

Pay **\*\*THIRTY SIX THOUSAND DOLLARS AND 00 CENTS\*\***

To
The
Order
Of

**\*\*KAISER PERMANENTE\*\***
\*\*\*\*

Bank of America, N.A.
San Antonio, Texas

VOID AFTER 90 DAYS

_Authorized Signature_

⑈"2943304"⑈ ⑆:114000019⑆: 0016410010 15"

THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK     THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK

---

2514

**LEWYN SCOTT GARRETT**
**ATTORNEY AT LAW / ESCROW ACCOUNT**
2225 SAINT PAUL STREET PH. (410) 366-2571
BALTIMORE, MD  21218

DATE 1-4-08

7-177-520

PAY
TO THE
ORDER OF  _Kaiser Permanente_                       $ 4,000.00

_Four Thousand_ ——————————————— DOLLARS

THE
**HARBOR BANK**
OF MARYLAND
BALTIMORE MD. 21201

FOR _Leonard and Brenda Jackson_

⑈"002514"⑈ ⑆:052001772⑆: "21000 25139"

20-14-3774B  09-2005

**Bank of America** 🇺🇸

Cashier's Check    JANUARY 07, 2008    No. **2916441**

Notice to Purchaser: In the event this item is lost, misplaced or stolen, a sworn
statement and 90-day waiting period will be required prior to replacement. This
check should be registered within 90 days.

Date

30-1/1140
NTX

Banking
Center    5018065 · 00008 · 002916441    MARY JACKSON FOR BRENDA JACKSON

**FORTY FIVE THOUSAND DOLLARS AND 00 CENTS**    Remitter (Purchased By)    **45000.00**

$

Pay
To
The
Order
Of    **KAISER PERMANENTE**
**CASE# CT062405X**

Bank of America, N.A.
San Antonio, Texas    VOID AFTER 90 DAYS    Authorized Signature

⑈2916441⑈ ⑆111000019⑆ 001641001015⑈

🏦 THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK    THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK 🏦

EXHIBIT TWO

aol:rtch://36988171028/

Subj: **Letter for Ray Jackson**
Date: Wednesday, April 9, 2008 1:02:49 PM
From: JYWickRPh
To: GAllenDale
cc: RJ4340

Ray Jackson has asked for a letter of support as he approaches sentencing.

I have known Ray for many years, probably more than 15. I was his supervisor at Saint Elizabeths Hospital for many year, but transferred to the National Cancer Institute in 2001. During the time I supervised him, he earned and I gave him excellent evaluations. He was kind to the patients, and diligent about his work. When I heard that he had been arrested for theft, I did not believe it. I would not believe it now if he had not plead guilty.

Ray has asked me to advance a case for leniency. The decision to do so has been excruciating for me for many reasons. Only two reasons have propelled me to act on his behalf: his children and my own cousin's experience.

Although my concern for his children is clear (they need their parents), my cousin Lew's story needs elucidation. When we were in our 20s, my cousin who had been my best friend in childhood and who had grown away from me after high school went to prison on serious drug charges. Although our entire family was shocked, we rallied to support him before and during his incarceration.

Lew and I became pen pals, and while in prison, Lew began to read fiction, a passion I share. We became close again. This is what I learned from Lew: a prison is a barren place that wastes life. Most inmates are not rehabilitated. Most inmates do not experience profound personal growth, or life-altering enlightenment. They simply pass time paying their debt to society. This is a lesson that has been reinforced over the years as I have worked with the District's jail program, and the federal corrections system.

I would not have written this letter if Ray was a violent offender. I believe, however, that Ray's children need him and that he will be unable to make amends or repay the system from inside a prison. It's that simple.

Jeannette Wick, R.Ph., MBA

Get the MapQuest Toolbar, Maps, Traffic, Directions & More!

1 of 1                                                                                        4/9/08 1:19 PM

From: cane, jr. rudolph <rcanejr@cox.net>
  To: gallendale@aol.com
Subject: Re: Letter of Support for Mr. Raymond Jackson
 Date: Thu, 10 Apr 2008 12:10 am

4619 E. White Aster St.
Phoenix, AZ 85044

 April 9, 2008

Re: Letter of Support for Mr. Raymond Jackson

Dear Your Honor:

I have known Mr. Jackson since 1979. We were college chemistry classmates when we first met. He has since been one of my best friends.

He was an excellent student with whom a mutual admiration of scholastic abilities was constantly shared.

He preceded me by one year in his acceptance to one of University of Maryland's professional schools (the school of pharmacy ) and was a source of encouragement for me to attend the same institution to pursue my professional education there as well in the field of medicine.

I was ultimately successful in gaining acceptance there one year later and we again encountered one another and shared mutual encouragement as we completed our respective educational journeys.

He again preceded me in the actual practice of his profession. During this period, while I was still in training, he and his wife were stalwart sources of moral support and comforting respite during my prolonged physician training schedule. They hosted me several times for dinner while residing in Baltimore as well as for short vacations when they resided in Florida.

Subsequent to both of us having entered our desired professions, we have shared a great friendship and mutual respect for our not unexpected achievements in our respective careers.

I have observed with admiration his and his wife's rearing of their two academically accomplished children who are well mannered and respectable young adults and who both now attend college.

As a result, it was a great shock upon Mr. Jackson's admission to me of the grave error in judgement and mistake he had made which has culminated in his current legal situation.

Following an approximate one year long hiatus from regular phone correspondence, he called me and acknowledged embarrassment, shame, loss of pride, deep depression and remorse as a result of what he had done.

His story of his ordeal was an outline of an occurrence that was an utter shock due to it's stark contrast with the character profile, life and accomplishments that I had come to know as typical of what Mr. Jackson represented through his life since our first meeting.

It came to me as he related his self imposed circumstances, his regrets and the shame that he acknowledged bringing upon his family, that I realized that all who are human do err. In accord with this, it is my belief that no one is beyond forgiveness and second chances, particularly one whom up to the point of his variance outside the law, has led a positive life which has been an encouragement to many others.

To that end, it is without reservation that I write this letter of support for Mr. Raymond Jackson in his plea for leniency in judgement and punishment related to the offense for which he has been charged.

Sincerely,

Rudolph Cane, Jr., M.D.

April 16, 2008

Ms. Ashley Jackson
321 Wayland Ave
Providence, RI 02906
(301) 659-0066 cell
Ashley_Jackson@brown.edu

Re: Raymond Jackson's Sentencing

To Whom It May Concern:

My name is Ashley Jackson and I am a twenty-year old student at Brown University in
Providence, RI. I am writing this letter in support of my dad, Raymond Jackson, whose
sentencing you will be delivering on May 2, 2008. Though I understand that my dad's
actions were violation of the law, I would like for you know that they were not a
reflection on his character or on the great man that he is. My dad is the most loving,
supportive, and caring man I know and I truly hope that you will take this into
consideration in your decision on May 2, 2008.

From the day I was born, my dad has always been directly involved in my life. For
eighteen years we have lived together, along with my mother and younger brother, and
we have been a happy family. I have so many fond memories of him attending my school
events, taking the family on vacations, teaching me to drive, and engaging in
conversations with my mother, brother, and I. As a high school senior, my dad was also
the one who encouraged me to apply to Brown University and set high future goals for
myself. During the application process, he helped me to write my essay and accompanied
me to all of the pre-admission events. As a result of all his support, I will be graduating
from Brown next spring with a BA in Public Policy and Africana Studies; without a
doubt, I would not be here without him.

Though my brother and I received more than our fair share, other people also benefited
from my dad's inherently kind and loving nature. Throughout my life I have always
known him to extend a helping hand to those in need. Within our family, he always
closely monitors the health of my grandparents, older aunts, and other aging relatives;
there have been countless occasions where he would explain, then re-explain the
importance of medication to them and encourage them to maintain physically active
lifestyles. He also exhibited concern and compassion for the well-being of those outside
our family. On several occasions he visited and gave generously to orphaned children in
Brazil who were in desperate need of substantive and emotional support. After returning
from his trips, he would show my brother and I pictures of the children and their living
conditions and remind us to count our blessings and live humbly.

In many ways, I believe that it was my dad's generous nature that inspired the actions
that have resulted in his current situation. His desire to help everyone clouded his
judgment and caused him to make some poor decisions. Though his final punishment has

yet to be rendered, in many ways he is already punishing himself. For the past year, he has been in a state of depression inspired by the guilt and shame of his actions. During this time he has left our house on very few occasions and constantly talks about how much he regrets the poor choices that he has made. Though our family has made great efforts to console him, he has continues to punish himself and constantly remind himself, and others, of his shortcomings. In many ways, this punishment is far worse than any the legal system could administer and shows that he is truly disappointed in himself and sorry that he chose to do what was done.

In conclusion, I would like to say that my dad's current situation has been very difficult time for him and the rest of my family. During many tearful conversations he has apologized to us for what he has done and expressed the regret he feels over the decisions made. Through it all, however, my family and I have stood by him and showed love and support because we know that his actions are neither indicative of his character nor his values. I hope through this brief letter I have conveyed even a small understanding of my father's remarkable nature that you will take into consideration on May 2, 2008.

Thank you for your time and consideration,
Ashley Jackson

WINSLOW B. WOODLAND, RN, BC

April 4, 2008

Dear Sir or Madam:

I have worked with Ray Jackson at St. Elizabeth's Hospital located 2700 Martin Luther King Avenue, S.E. Washington, D.C. for at least 5 years to my recollection. Mr. Jackson exhibited a very professional and pleasant demeanor. He and I with others would participate in pick up basketball games and often discuss family, work, and issues facing our respective communities.

During this period of time I had come to know Ray Jackson as a man of high character and integrity that cherished his family and his work who found time to assist his friends as needed.

Apparently, Mr. Jackson's life has been a series of appropriate and calculated decisions: finishing school, graduate education, marriage, fatherhood, consistent employment, and trustworthy friend. His character has been built on decisions such as these and in my mind makes him worthy of recognition as a man of honor and integrity.

I am proud to call this man friend.

Sincerely,

*Winslow B. Woodland*

Winslow B. Woodland
Registered Nurse

I am writing this letter on behalf of Raymond Jackson. I have known Ray my entire life. We are first cousins in a very large extended family. Although many of us have gone our separate ways, Ray remains a constant in our family constellation. He is a caring son, nephew, brother, uncle and cousin. His current situation is an exception to his character. For most of his life he has been nothing but dependable, trustworthy, honest and giving.

The best example of Ray's true character is seen in his children, Ashley and Aaron. Ray's kids are smart without arrogance and although they have grown up with many privileges they do not exert an air of entitlement. His children care about the welfare of others and show that in their actions. Ashley who is completing her junior year at Brown University was recently challenged on her decision to major in Public Policy. She was told that she should take advantage of Brown's connections with Wall Street to make some money. Her reply was that her parents had taught her that life is more than possessions and that it was her obligation to find a goal in life that not only makes her happy, but gives back to society. In Ashley I can see the fruits of her parents' encouragement and support over the years. Her brother is more of the same. He is an exceptional young man. I give my cousin credit for having raised great children.

Ray's caring nature is also reflected in his commitment to his extended family. When our aunt was diagnosed with Leukemia, it was Ray who researched the options and helped the rest of the family understand what she was up against. Ray supported the family through her illness and stood strong for us when she passed away. He is the key support in the life of our elderly aunt who suffers from dementia. It is Ray who has looked after her, made sure she has food and caretakers. He shovels her walk when it snows, get her to the doctors when she is ill and finds treatment options when her condition is unstable. He does this out of love and caring. There is no reward or personal gain. Ray is simply committed to family and shows that in all of his actions.

I have spoken with Ray about his current situation. He willingly accepts responsibility and acknowledges his own faulty decision making. He expresses great remorse for having abused his position. We have spoken about the reality that many of us first generation college educated individuals find ourselves in. We have benefited greatly from education and have achieved access to so much, while the majority of our close friends and family members continue to have so little. We are often placed in situations that require great clarity of thought and action. We must always balance our commitment to family and friends with the greater demands on us as professionals. Ray impressed upon me to learn from his misdeed. He encourages me to retain the highest level of integrity across situations even when the needs of those close to me are at risk. I appreciate his willingness to see the errors he has made and to use his troubles as a source of advice to me.

Raymond Jackson is a wonderful human being. He is a caring parent and a devoted family member. He accepts full responsibility for his current situation and is truly sorry for breaking the trust of his employer. I pray that those who judge him will carefully weigh his error in the context of his many deeds.

Sincerely,

Brenda Allen

To Whom It May Concern:

My name is Brian Clark and Ray has known me all my life but it wasn't till my first year in college while playing football for North Carolina State University that I came to know Ray personally. It was because of Ray's love and support for a second cousin that had no idea who he was that I came to him and love him. As I reflect on my life I can honestly say that I attribute much of my success to Ray and his family.

I feel that it is important that I first inform you of who I am before I humbly offer you my opinion on Ray's sentencing. I believe in the in God the Father Almighty, maker of heaven and earth. And in Jesus Christ, His only Son, our Lord: who was conceived by the Holy Spirit, died and was buried; but on the third day He rose from the dead; he ascended into heaven and sits at the right hand of God the Father Almighty; from there He shall come to judge the living and the dead. I believe in the Holy Spirit, the communion of saints, the forgiveness of sins, the resurrection of the body, and the life everlasting. God is revealed to us as Father, Son and Holy Spirit. I believe that upon accepting God's atoning sacrifice we have been justified by the blood of Jesus Christ and we are being sanctified by a process in which the believer is changed to reflect the character of Jesus by yielding to God's Word and the Holy Spirit. And the church is God's chosen instrument to proclaim and manifest God's kingdom on the earth. The message and mission of the church is "the gospel of the kingdom" which simply means the "rule" of God. Our responsibility then is to enforce the victory of God over every dark and godless influence, until King Jesus returns. Many men of this country shared this belief and help structure this great land with these same beliefs on their hearts and minds.

As one standing on the outside of the courtroom looking at this case I'm reminded of a story the Bible recorded in the book of Luke fifteen chapter eleventh through the thirty-second verse. When I young man received his share in his father's estate, went out and careless spent it on wild living, and went he found himself without money, without company, and eating with pigs he got up and returned to his father. Now his father filled with compassion accepted his son back and showered him with gifts, food, and prestige. In this story Jesus was illustrating the act of how the Father in heaven accepts those who acknowledge and repent their sins. I have spoken with Ray several times since the exposure of his charges and am truly convinced the he acknowledges and regrets his decisions in this matter.

Finally, God has carefully places you in this position and it is not by chances or by luck that you cast judgment over this case. The Bible tells me that God is the Most High Judge able and equipped to give judgment over all. But I believe that He gives the authority to some to judge with the same grace and mercy over others that are found with fault against the law out the world. Judgment is not a privilege nor is it a responsibility but an honor, so I ask your honor that you use grace and mercy when sentencing my cousin and my friend Raymond Jackson.


Sincerely,

Brian Clark

Wade L. Portee III
10432 Markby Court
White Plains, MD 20695
April 14, 2008

Honorable Judge Emmet G. Sullivan
US District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20004

To the Honorable Judge Emmet G. Sullivan:

My name is Wade L. Portee III and I am writing you today on behalf of
Raymond Jackson, who is scheduled to appear in your court for sentencing on
May 2, 2008. I have known Raymond for almost ten years. We met while our sons were
on the same youth football team in Charles County. When I learned of his incident I was
stunned, as he is such a positive person, and I have never known him of conducting
himself in a negative manner, or contributing to unproductive, non-positive activities.

I can tell you that Raymond is a good person, an intelligent and driven man, and by no
means a danger to society. I respectfully ask you to take these words into consideration
when sentencing him, I ask that your sentence be merciful and not punitive, and that you
take into account all the people whose lives he has touched who will consequently miss
him, and especially how his absence will affect the lives of his wife and children.

It has been said that great leaders build their lives upon simple principles. Although I
have known Raymond for only ten years, I am well aware of the principles on which he
has built his life: honesty, truth, courage, and integrity. Raymond cares about people. He
engages people's ideas, helps them make them better. Raymond may sometimes be your
harshest critic, but he is always your friend. Raymond is selfless, always giving and
sharing.

I hope that sharing my observations concerning Raymond Jackson will assist you in
making the appropriate decision in his case.

Thank you for your consideration.

Sincerely,

Wade L. Portee III
Senior, Information Technology Specialist
Department of the Treasury

**From:** Eliza Briscoe <briscoeev@yahoo.com>
**To:** gallendale@aol.com
**Subject:** Letter for Ray Jackson
**Date:** Sun, 6 Apr 2008 8:43 pm

To whom it may concern,
Ray Jackson is a very wonderful person.  He is a Father, Husband and a Friend.  He has opened up his home at
time of need and his heart.  He is a caring person whom I have really grown to admire. He has worked hard for
his Family.  I hope this incident will not hurt his future or his Family.  Please have mercy on Ray at this time. I am
sure he is aware of any wrong doings and has learned from his mistakes.  Ray is an honest person that may have
made a mistake, but I feel he deserves mercy.
I can be reached for any further information at 301-645-4745.
Eliza Briscoe

You rock. That's why Blockbuster's offering you one month of Blockbuster Total Access, No Cost.

Subj:     **Letter of Reference for Ray Jackson**
Date:     Monday, April 7, 2008 9:28:30 AM
From:     andrekl@ucia.gov
To:       gallendale@aol.com
cc:       RJ4340@aol.com

I've known Ray Jackson since 1994.  Further, I consider Ray to be a good friend and family man, whom I've spent much time with.  In addition, our kids have played sports together and they've been schoolmates as well.

While we all make mistakes, I can not condone Ray's actions that led to his guilty charge in January.  This was certainly a gross aberration in character and judgment for the person I've known over the past 12 years.
    In fact, over the year's I've known Ray, I never once had a reason to question his morality, ethical judgment or character.

However, despite his tremendous and egregious lapse in judgment and character, I respectfully ask that the judge please consider leniency and understanding in his sentencing.  I firmly believe that Ray is truly remorseful for his mistake and undeniably holds himself accountable for his actions.  I'd also ask that the judge please take into consideration that Ray is a husband and father of two young adult children, who still need mentorship and guidance from their parents.

Respectfully,

Andre K. Little