**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO.  07-340-01 (EGS)** |
| **RAYMOND JACKSON** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully presents this memorandum in aid of sentencing.

### SUMMARY

Defendant Jackson abused his position of trust by methodically stealing $95,000 worth of medications while he served as Chief Pharmacist at St. Elizabeths Hospital, a public institution for the mentally ill.  The defendant profited from the thefts by selling medications he had stolen, along with medications stolen by his wife from Kaiser Permanente, to an acquaintance who owned a private pharmacy.  The thefts occurred during a period of more than three years; the defendant used a sham company to try to make the sale of stolen medications look legitimate; and the defendant and his wife obtained more than $200,000 from the sale of stolen medications. For his crime, the defendant should be sentenced to 24 months incarceration, which is the bottom of the advisory guideline range.

### BACKGROUND

Two representations made in the defendant's sentencing memorandum need to be clarified in order for the Court to have an accurate description of the defendant's situation.  First, the defendant's memorandum represents that the defendant "self report[ed]" his crime to the

government. (Def. Mem. at 4.) Although it is correct that counsel for the defendant called the undersigned Assistant to report the defendant's crime on December 8, 2006, the undersigned Assistant already was involved in the investigation of the defendant's criminal conduct because of a search warrant executed at the defendant's home on October 24, 2006. The search warrant had been obtained by Maryland state authorities pursuant to an investigation of the wife's conduct at Kaiser Permanente. When medication bottles with St. Elizabeths labels were found in the home during execution of the warrant, the defendant's involvement in the crime was obvious. In fact, following execution of the search warrant, the defendant was suspended from his position at St. Elizabeths and placed in a non-duty status starting on November 6, 2006. Thus, the defendant's conduct had been discovered and he was aware of the likely consequences of his thefts before he reported himself to the government.

Second, the defendant's sentencing memorandum represents that the defendant cooperated with the government "selflessly" and in order "to help his wife at her sentencing." (Def. Mem. at 4-5.) Although it is correct that the defendant cooperated in order to reduce his wife's sentence, that was not the defendant's initial proposal. One week after contacting the government, the defendant offered to cooperate with the government in exchange for a lower sentence by providing evidence against the owner of the pharmacy to whom he sold the stolen medication. The government declined this offer because the defendant was more culpable than the owner. Instead, the government offered the defendant the opportunity to cooperate against the owner with a promise that the government would report the results of the cooperation to the Maryland state authorities as a way for the defendant's wife to obtain a lower sentence. The defendant accepted the government's offer, and the results of his cooperation were reported to

Maryland authorities.  The government understands that the defendant's wife benefitted from the defendant's cooperation by receiving a shorter sentence.

## ARGUMENT

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining the defendant's sentence. Gall v. United States, 128 S.Ct. 586, 596 (2007).  This Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

    A.    <u>The Sentencing Guidelines Remain a Crucial Aspect of Sentencing</u>.

The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate

sentence," Kimbrough v. United States, 128 S.Ct. 558, 564 (2007), it remains the case that "the

Commission fills an important institutional role: It has the capacity courts lack to 'base its

determinations on empirical data and national experience, guided by a professional staff with

appropriate expertise,'" id. at 574 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th

Cir. 2007) (McConnell, J., concurring)). The Supreme Court "accordingly recognized that, in the

ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough

approximation of sentences that might achieve § 3553(a)'s objectives.'" Kimbrough, 128 S.Ct.

at 562-63 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).[1]

     The advisory Guidelines are the sole means available for assuring some measure of

uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform

Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors

particularly relevant to an individual defendant, is the only available means of preventing the

disfavored result of basing sentences on the randomness of the draw in judicial assignments. The

section of Booker that makes the Guidelines advisory also explained that "the remaining system,

while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress'

preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility*

*sufficient to individualize sentences where necessary.*" Booker, 543 U.S. at 264-65 (emphasis

---

[1] In Rita, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, Rita, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." Id. at 2463 (emphasis in original).

added).  The Guidelines remain at the center of this effort to "avoid excessive sentencing

disparities," and, as <u>Booker</u> explained, the Sentencing Commission will continue "to promote

uniformity in the sentencing process" through the Guidelines.  <u>Id.</u> at 263.

Therefore, the Supreme Court has held that "district courts must begin their analysis with

the Guidelines and remain cognizant of them throughout the sentencing process."  <u>Gall</u>, 128 S.Ct.

at 597 n.6.

> It is also clear that a district judge must give serious consideration
> to the extent of any departure from the Guidelines and must
> explain his conclusion that an unusually lenient or an unusually
> harsh sentence is appropriate in a particular case with sufficient
> justifications.  For even though the Guidelines are advisory rather
> than mandatory, they are, as we pointed out in <u>Rita</u>, the product of
> careful study based on extensive empirical evidence derived from
> the review of thousands of individual sentencing decisions.

<u>Id.</u> at 594.[2]

In <u>Kimbrough</u>, which was issued on the same day as <u>Gall</u>, the Court emphasized the

district courts' responsibility to consider the Sentencing Guidelines as a bulwark against

disparate sentencing.  The Court held that the Guidelines for crack cocaine offenses are advisory,

and that a sentencing court in such a case may consider, among other factors, the criticism stated

by the Sentencing Commission and others of those particular guidelines.  Responding to an

assertion that such case-by-case assessment of the propriety of the Guidelines may lead to

---

[2]  The Court added:  "If [the judge] decides that an outside-Guidelines sentence is
warranted, he must consider the extent of the deviation and ensure that the justification is
sufficiently compelling to support the degree of the variance.  We find it uncontroversial that a
major departure should be supported by a more significant justification than a minor one."  <u>Id</u>. at
597.

significant disparity in sentencing, the Court emphasized the district courts' responsibility to avoid that result:

> Section 3553(a)(6) directs *district courts* to consider the need to avoid unwarranted disparities — along with other § 3553(a) factors — when imposing sentences. See *Gall, ante* . . . .

Kimbrough, 128 S.Ct. at 574 (emphasis in original). Recognition of the unique value of the Guidelines is the only available means of carrying out this mandate.

Rather than encourage wholesale abandonment of guideline sentencing, Kimbrough narrowly focused on sentencing for crack cocaine offenses. With respect to those offenses alone, the Court suggested that the Guidelines are not entitled to the ordinary respect given to the Sentencing Guidelines on the basis of the care and study put into them, given that the Sentencing Commission itself has condemned its own guidelines in this area. Regarding any other offenses, the Supreme Court suggested that rejection of the suggested guidelines based only on an individual judge's disagreement with the formulation of the guidelines may not fare well on appeal, stating: "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." Id. at 563  (quoting Rita, 127 S. Ct. at 2465). These statements reflect the fact that, ordinarily, the Sentencing Guidelines reflect the distillation of national sentencing experience and provide a useful measure for determining appropriate and consistent punishments.

B.  3553(a) Factors Support Imposition of a Sentence Within the Advisory Guideline Range.

For the above reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the Guidelines are entirely advisory, and that a district

court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness.  However, our point is that a district court must consider the guideline range, see § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders.  Moreover, as explained below, other 3553(a) factors support imposition of a sentence within the guideline range.

Nature and circumstances of the offense

The nature and circumstances of the offense are consistent with the sentence of incarceration recommended by the Guidelines.  During a period of more than three years between July 2003 and October 24, 2006, the defendant stole $95,000 worth of medications from a hospital which treats the mentally ill at public expense.  He abused his position of trust as the Chief Pharmacist in order to facilitate his thefts.  The defendant turned the stolen medications into cash by selling them, as well as other medications stolen by his wife, to one of his acquaintances who owned a pharmacy.  In doing so, the defendant used the company Jackson Pharmaceutical Services in order to make the sales appear legitimate.  Although he also provided some of the stolen medications to relatives at no cost, the defendant and his wife collected more than $200,000 through sales of stolen medications.  A sentence of 24 months incarceration is appropriate for this conduct.[3]

_____

[3]  The defendant cites to United States v. Ferguson, 456 F.3d 660, 665 (6th Cir. 2006), as support for imposition of a sentence without incarceration in this case.  (Def. Mem. at 1.)  In Ferguson, however, the trial court not only imposed a sentence of incarceration, but actually went above the advisory guideline range.  That sentence was upheld by the 6th Circuit.  Id. at 668 ("Under these circumstances, we cannot say that the court's decision to impose a sentence six months above the advisory Guidelines range was unreasonable.")

History and characteristics of the defendant

At the time he began stealing medications, the defendant was a responsible adult with an advanced education, gainful employment, and a supportive extended family.  As a Commander in the Public Health Service, he was in charge of medications for a large public institution; and he was responsible for the other pharmacists who reported to him.  In fact, the testimonials provided to the Court demonstrate the reputation which the defendant had earned as a leader in the community.

The defendant seeks a lower sentence because of the influence his wife exercised over him.  There is nothing unusual in this request because every criminal defendant has a motive for the crime he has committed.  Every defendant can point to something about his age, education, physical condition, employment history, or family circumstances that distinguishes him from others.  The normal differences which occur among individuals in these areas, however, should not be the basis for one judge to impose a harsh sentence whereas another judge would impose a lenient sentence.  For instance, the government does not seek a sentence above the guideline range because the defendant is a mature, well-educated individual with a supportive family who has had sufficient benefits and success in his life, despite some disappointments, to know that he should not abuse his position of trust to enrich himself by stealing medications from a public hospital.  On the other hand, nothing about his life experiences mitigates his criminal behavior. While the reasons for criminal behavior may vary widely, they all come down to the fact that the defendant  wanted illegal gain more than he wanted to continue living a reputable life.  Like the Sentencing Commission, the government seeks a balanced approach in which individual

characteristics are not ordinarily sufficient to justify sentences either above or below the guideline range otherwise applicable to the defendant.

Further, under the circumstances of this case, the effects of incarceration upon the defendant's family is not a basis for a non-guidelines sentence. As the Sentencing Commission recognized, see U.S.S.G. § 5H1.6, inconvenience and even harm to a criminal defendant's family are unfortunate but normal results of a criminal act, and ordinarily do not warrant leniency. The Commission's judgment is sound. Leniency based on family circumstances should not be afforded here given the severity of the defendant's offense, the need for the Court to avoid disparate sentences for like offenders, and the fact that the defendant's family has the means to maintain itself in his absence.

Sentence Which Reflects the Offense, Promotes Respect for Law, and Provides Just Punishment

The Guidelines reflect the new consensus that those convicted of economic crimes should not be able to avoid incarceration, even where such crimes constitute the defendant's first offense. The legislative history of the Sentencing Reform Act of 1984, which created the United States Sentencing Commission, made clear that one of the goals of the legislation was to correct what Congress saw as a significant problem in the criminal justice system: the fact that "some major offenders, particularly white-collar offenders . . . frequently do not receive sentences that reflect the seriousness of their offenses." U.S.C.C.A.N., 98th Congress, 2nd Sess. (1984) at 3260. As Justice Breyer, one of the Sentencing Commission's original members, has explained:

> The Commission found in its data significant discrepancies
> between pre-Guideline punishment of certain white-collar crimes,
> such as fraud, and other similar common law crimes, such as theft.
> The Commission's statistics indicated that where white-collar
> fraud was involved, courts grant probation to offenders more

> frequently than in situations involving analogous common law crimes; furthermore, prison terms were less severe for white-collar criminals who did not receive probation. To mitigate these discrepancies, the Commission decided to require short but certain terms of confinement for many white collar offenders, including tax, insider trading, and antitrust offenders, who previously would have likely received only probation.

Breyer, "The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest," 17 Hofstra L. Rev. 1, 20 (1988). This approach provides just punishment for the considerable harm that white collar crimes cause society.

Need for Deterrence and to Protect the Public from the Defendant's Further Crimes

As is the situation with many first time white collar offenders, it is unlikely that the defendant will commit additional crimes in the future. This reduces the need for specific deterrence of the defendant through imposition of a harsher sentence than normal. However, the need for general deterrence remains high in this situation. The community needs to know not only that white collar criminals receive just punishment, as described above, but also that sentences will deter future crimes by others. If the theft of medication by a Chief Pharmacist at a public mental hospital does not result in a significant punishment, others may be emboldened to commit crimes that they would avoid if they feared punishment.

Need to provide Educational or Vocational training, Medical Care, or Correctional Treatment

The defendant has no need for special treatment in this regard. He already has an advanced degree developed through years of employment. Similarly, he has no unusual health conditions.

<u>Avoiding Unwarranted Disparities Among Defendants with Similar Records and Conduct</u>

In this area, the Guidelines provide unparalleled assistance to the Court.  Because they have been crafted by an expert Sentencing Commission based upon the average sentences given by judges in thousands of cases, the Guidelines provide a neutral measure that can be used to compare defendants and the crimes which they commit.  In <u>Rita</u> the Supreme Court held that the Guidelines "seek to embody the §3553(a) considerations, both in principle and in practice."  <u>Id.</u> at 2464.

> The upshot is that the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale.

<u>Id.</u> at 2463.

<u>Need to Provide Restitution to Victims</u>

Although the defendant cannot repay St. Elizabeths significantly during the time he is incarcerated, immediate repayment of the defendant's debt is not the only consideration in a criminal sentence.  In this case the other factors favoring a sentence of incarceration weigh more heavily than the need to provide prompt restitution.

CONCLUSION

The Court should use its discretion to stay within the guideline range. The government recommends a sentence at the bottom of the range, a sentence of 24 months incarceration.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

/s/ *Thomas E. Zeno*
_____
THOMAS E. ZENO
 D.C. Bar. No. 348623
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-6957
Thomas.Zeno@usdoj.gov